UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ROBERT ALLEN HAVEMAN,

        Defendant.
_____/

No. 1:16-CR-38

Hon. Robert Holmes Bell
United States District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Robert Allen Haveman and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1.     <u>Defendant Agrees to Plead Guilty to the Felony Information</u>. Defendant gives up the right to indictment by a Grand Jury and agrees to plead guilty to the Felony Information, which charges Defendant with wire fraud, in violation of Title 18, United States Code, Section 1343, and money laundering, in violation of Title 18, United States Code, Section 1957.

2.     <u>Defendant Understands the Crimes</u>.

<u>Count 1</u>: In order for Defendant to be guilty of violating Title 18, United States Code, Section 1343 as charged in the Information, the following must be true: (1) Defendant knowingly devised a scheme to defraud and to obtain money by means of false or fraudulent pretenses, representations, or promises; (2) The scheme included a material misrepresentation or concealment of a material fact; (3) Defendant had the intent to defraud; and (4) Defendant used a wire communication, or caused another to use a wire communication, in interstate commerce in furtherance of the scheme.

Count 2: In order for Defendant to be guilty of violating Title 18 United States Code, Section 1957 as charged in the Information, the following must be true: (1) Defendant knowingly engaged in a monetary transaction; (2) the monetary transaction was property derived from specified unlawful activity (here, wire fraud); (3) The property had a value greater than $10,000; Defendant knew the transaction was in criminally derived property; and (4) The monetary transaction took place within the United States.

Defendant is pleading guilty because he is guilty of the charges described above.

3. Defendant Understands the Penalties.

Count 1: The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343 is the following: 20 years in prison; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

Count 2: The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1957 is the following: 10 years in prison; a three-year period of supervised release; a fine of $250,000 or twice the amount of the criminally derived property involved in the transaction; and a mandatory special assessment of $100.

Defendant agrees to pay the special assessments at or before the time of sentencing unless Defendant affirmatively demonstrates to the Court that he lacks the ability to pay.

4. Supervised Release Defined. Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements. Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could

result in Defendant serving a total term of imprisonment greater than the statutory maximums stated above.

    5.    <u>Factual Basis of Guilt</u>.  Defendant and the U.S. Attorney's Office agree and stipulate to the following facts, which need not be proven at the time of the plea or sentencing:

    a.    Defendant has carefully reviewed the allegations contained in Counts 1 and 2 of the Felony Information and agrees that each and every allegation is true and accurate to the best of his knowledge.

    b.    Defendant intended to deprive the Elsa D. Prince Living Trust of money by means of false or fraudulent pretenses, representations, or promises for the purpose of bringing about a financial gain to himself and others.

    c.    Defendant knew the $1,000,000 (one million dollars) that he used to make the December 7, 2011, payment on the land contract for the purchase of the vacant property identified in Count 2 was proceeds he obtained from the commission of the wire fraud offense to which he is pleading guilty.

    d.    Defendant caused $16,240,000 (sixteen million two hundred forty thousand dollars) in actual loss to the Elsa D. Prince Living Trust, including relevant conduct, as a result of the wire fraud offense to which he is pleading guilty.

    e.    The wire communication identified in Count 1 crossed a state line and therefore affected interstate commerce.

    f.    The monetary transaction in Count 2 involved the transfer and withdrawal of money by, through, or to a federally insured financial institution in the United States and therefore affected interstate commerce.

6.  <u>Restitution</u>.  Defendant understands that he will be required to pay full restitution as required by law. The parties stipulate that, as of February 17, 2016, Defendant has voluntarily transferred $2,653,000 in various assets to the Elsa D. Prince Living Trust to begin repaying the amount of his fraud loss (hereinafter, the "Transferred Assets"). Additionally, Defendant agrees that he and his wife, Nancy Haveman, will immediately transfer all of their right, title, and interest in vacant land located at 0 Olive Shore Avenue, Ottawa County, West Olive, Michigan, to the Elsa D. Prince Living Trust or its designee which is designated as parcel number 70-11-09-300-050 (hereinafter, the "Lake Lot"). The parties stipulate that the current value of the Lake Lot is $1,607,400. Defendant understands and agrees that a failure to transfer the Lake Lot to the Elsa D. Prince Living Trust or its designee, for any reason, constitutes a material breach of this Plea Agreement.

The parties stipulate that, after the transfer of the Lake Lot referenced above, the applicable amount of restitution is approximately $11,979,600 (eleven million nine hundred seventy nine thousand six hundred dollars), which may be further reduced if additional restitution payments are made by or on behalf of Defendant.

Defendant further agrees to sell the following vehicles (hereinafter, "the Vehicles"), in an arms-length good faith transaction as indicated:

    a.    2005 Chevy Corvette VIN #1G1YY34U155122427, to be sold no later than 30 days prior to sentencing; and

    b.    2008 Lexus LS 600HL VIN #JTHDU46F585004860, to be sold no later than 30 days after sentencing.

Defendant agrees to transfer the full proceeds from the sale of the Vehicles to the Elsa D. Prince

4

Living Trust immediately upon receipt. Defendant understands and agrees that a failure to sell the Vehicles and transfer the proceeds to the Trust as agreed, for any reason, constitutes a material breach of this Plea Agreement.

Defendant further agrees to transfer the entire balance of his EDP Management Retirement Trust and 401k Plan account, and the entire balance of his IRA account at Oppenheimer, (hereinafter, the "Retirement Accounts") to the Elsa D. Prince Living Trust within 21 days of the date of this Plea Agreement. Defendant understands and agrees that a failure to transfer the balances of the Retirement Accounts to the Trust within 21 days of the date of this Plea Agreement, for any reason, constitutes a material breach of this Plea Agreement.

The U.S. Attorney's Office agrees that Defendant shall be given credit against his restitution liability in the amount of money he transfers to the Elsa D. Prince Living Trust from his Retirement Accounts, the sale of the Vehicles, and from any other legal source. In particular, the U.S. Attorney's Office acknowledges that Defendant has voluntarily assigned to the Trust his interest in Autumn Woods R&S Partners LLC and three parcels of real property in Kalamazoo County, Michigan, (collectively, the "Autumn Woods assets") and agrees that Defendant shall be given additional credit against his restitution liability to the extent the amount of the net proceeds of any sale prior to sentencing of all or a portion of the Autumn Woods assets exceeds the values for those assets to which the parties have already agreed.

Defendant understands, however, that the Court – not the U.S. Attorney's Office – will determine the amount of restitution owed to the victim.

7. <u>Agreements on Forfeiture and Financial Accountability</u>. Defendant agrees that the proceeds he obtained from the scheme to defraud charged in Count 1 total $16,240,000 and that

he is liable for a forfeiture money judgment in that amount pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). However, as noted in paragraph 6 of this agreement, Defendant has begun making payments to the victim in this matter. Accordingly, the U.S. Attorney's Office agrees to reduce the Defendant's forfeiture liability in an amount equal to the $2,653,000 in Transferred Assets and the stipulated value of the Lake Lot ($1,607,400) that Defendant will transfer to the Elsa D. Prince Living Trust. This leaves Defendant with a remaining forfeiture liability of $11,979,600. The U.S. Attorney's Office further agrees to reduce Defendant's remaining forfeiture liability in an amount equal to the amount of money he transfers to the Elsa D. Prince Living Trust from the liquidation of his Retirement Accounts, the sale of the Vehicles, or from any other legal source in accordance with paragraph 6 above.

Defendant consents to the entry of a forfeiture money judgment at or before the time of sentencing in the amount of $11,979,600 less the amount of money transferred to the Elsa D. Prince Living Trust from the liquidation of his Retirement Accounts, the sale of the Vehicles, or from any other legal source in accordance with paragraphs 6 and 7. Defendant admits that he no longer possesses the criminal proceeds from the scheme to defraud charged in Count 1 and, therefore, consents to the forfeiture of substitute assets pursuant to 21 U.S.C. § 853(p) to apply against his forfeiture money judgment. Defendant admits that due to his own acts and omissions, the proceeds he obtained from the scheme to defraud charged in Count 1 cannot be located upon the exercise of due diligence; have been transferred, sold to, or deposited with a third party; have been substantially diminished in value; and have been comingled with other property which cannot be divided without difficulty.

Additionally, Defendant agrees to:

6

a. Truthfully answer all inquiries by the Government regarding Defendant's assets, testify truthfully as required, supply all available documentation, and assist in the location of any concealed assets.

b. Complete a financial affidavit regarding his assets no later than 30 days prior to sentencing in a format supplied by the U.S. Attorney's Office.

c. Not make any double jeopardy challenge to any administrative or civil forfeiture actions arising out of the course of conduct that provides the factual basis for the Felony Information. Defendant further agrees not to make any double jeopardy challenge to the charges in the Felony Information or to the imposition of a sentence for the offenses covered by this plea agreement, based upon any administrative or civil forfeiture actions.

The U.S. Attorney's Office agrees to:

d. Not enforce its forfeiture money judgment or its restitution order against the following real properties or assets:

- An improved parcel known as ███████████████ in Ottawa County, West Olive, Michigan, designated as Tax Parcel No. ███████████ (the "Lake House").
- An improved parcel known as ███████████████ in Ottawa County, Zeeland, Michigan, designated as Tax Parcel No. ███████████ (the "Allendale Property").
- A vacant parcel located on ███████████, in Ottawa County,

7

Zeeland, Michigan, designated as Tax Parcel No. ▓▓▓▓▓▓ (the "Allendale Land").

- Defendant's undivided 1/10 interest in Club Unit No. 305-4, Club Telluride Condominiums, in Colorado (the "Timeshare").

- 125 Class A Units in Michigan Turkey Producers, LLC, which are held as by Nancy Haveman and Bob Haveman, as joint tenants with right of survivorship; and a membership interest in Sandy Trails LLC, which is held by Nancy Haveman as trustee of the Nancy L. Haveman Trust u/a/d 10/28/1980, and by Robert Haveman as trustee of the Robert A. Haveman Trust u/a/d 10/28/1980 (collectively, the "Membership Interests").

provided that, prior to sentencing, Defendant forever relinquishes his interest in those real properties and assets to his wife, Nancy Haveman, and Nancy Haveman does not, either individually or through a third party, assert any claims against or rights that she may have in the Transferred Assets, the Lake Lot, the Vehicles, and the Retirement Accounts. The U.S. Attorney's Office's agreement to forego enforcement of its forfeiture money judgment or the Court's restitution order as to the Lake House, the Allendale Property, the Allendale Land, the Timeshare, and the Membership Interests shall be null and void to the extent the Defendant individually, or through a third party, receives any interest in the future in those real properties or assets. The U.S. Attorney's Office makes this concession in exchange for

8

the transfer of the Lake Lot to the Elsa D. Prince Living Trust as specified in paragraph number 6, and the transfer of money to the Elsa D. Prince Living Trust from the liquidation of Defendant's Retirement Accounts and the sale of the Vehicles.

The U.S. Attorney's Office agrees to give the Defendant further credit against the forfeiture money judgment sought by the United States for any additional funds Defendant pays as restitution with the Clerk of the Court prior to the time of sentencing. To the extent Defendant deposits any additional funds with the Clerk of the Court as restitution prior to sentencing that have not already been outlined in this plea agreement, the U.S. Attorney's Office will move for a commensurate reduction in the Defendant's forfeiture money judgment, provided Defendant, through his attorney, notifies the U.S. Attorney's Office of the deposits and the U.S. Attorney's Office confirms the same.

8. <u>Federal Tax Returns.</u> Defendant agrees that he will file, prior to the time of sentencing, correct and complete tax returns for tax years 2009, 2010, 2011, 2012, 2013, and 2014. Nothing in this agreement forecloses or limits the ability of the Internal Revenue Service to examine and make adjustments to Defendant's returns after they are filed. Defendant gives up any and all objections that could be asserted to the Examination Division of the Internal Revenue Service receiving materials or information obtained during the criminal investigation of this matter.

9. <u>Acceptance of Responsibility.</u> The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office

reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government states that Defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying it of his intention to enter a guilty plea, thereby permitting the Government to avoid preparing for trial, and hereby moves the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater.

10. **Non-Prosecution Agreement**. The U.S. Attorney's Office for the Western District of Michigan agrees not to bring additional criminal charges against Defendant in the Western District of Michigan for: (A) Defendant's theft of money from Elsa D. Prince or the Elsa D. Prince Living Trust; or (B) Defendant's money laundering activities using the proceeds derived from Defendant's scheme to defraud Elsa D. Prince or the Elsa D. Prince Living Trust. This promise of non-prosecution does not include criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371).

11. **Protection for Proffered Statements**. The U.S. Attorney's Office agrees that information provided by Defendant through his proffers will not be used by the Government to enhance the Defendant's sentence, in accordance with Sentencing Guidelines § 1B1.8 and according to the terms of the written agreement entered into between the parties. It is expressly understood, however, that such information may be used by the Government at sentencing if Defendant takes a position at sentencing that contradicts information provided by Defendant pursuant to the proffer agreement.

10

12. <u>Non-Binding Stipulations Regarding Sentencing Guideline Factors</u>. Defendant and the U.S. Attorney's Office agree and stipulate to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Count 1<br>Base Offense Level | § 2B1.1(a)(1) | 7 |
| Count 1<br>Specific Offense Characteristic:<br>Loss Amount | § 2B1.1(b)(1)(K) | +20 |
| Count 2<br>Base Offense Level | § 2S1.1(a)(1) | 27 |
| Count 2<br>Specific Offense Characteristic:<br>Conviction for 18 U.S.C. § 1957 | § 2S1.1(b)(2)(A) | +1 |
| Abuse of Position of Trust | § 3B1.3 | +2 |
| Adjusted Offense Level (Subtotal) | § 3D1.2, 3D1.3 | <u>30</u> |
| Acceptance of Responsibility<br>(pursuant to ¶9 above) | § 3E1.1 | -3 |
| Total Offense Level: | | 27 |
| Advisory Guideline Range: | | 70-87 months custody |

Defendant and the U.S. Attorney's Office further agree and stipulate that the "sophisticated means" enhancement in USSG § 2B1.1(b)(10) does not apply.

Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Both Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all

11

factual misstatements relating to the calculation of the sentence. Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, Defendant cannot, for that reason alone, withdraw his guilty plea.

13. <u>The Sentencing Guidelines</u>. Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

14. <u>Waiver of Constitutional Rights</u>. By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

    a. The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

  b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

  c. The right to confront and cross-examine witnesses against Defendant.

  d. The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

  e. The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

  f. By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

15. <u>FOIA Requests</u>. Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

16. <u>Hyde Waiver</u>. Defendant acknowledges, by his voluntary admissions of guilt, that the position of the U.S. Attorney's Office in this case is not vexatious, frivolous, or in bad faith, and he hereby disclaims and waives any right to make any claim for attorney fees.

17. <u>The Court is Not a Party to this Agreement</u>. Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by

the U.S. Attorney's Office or the parties regarding the sentence to be imposed. Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all his obligations under this agreement. Defendant understands that no one – not the prosecutor, Defendant's attorney, or the Court – can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

18.  **This Agreement is Limited to the Parties.**  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by Defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

19.  **Consequences of Breach.**  If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. Defendant further agrees to waive and forever give up his

right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

20. **This is the Complete Agreement.** This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

21. **Deadline for Acceptance.** If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by February 26, 2016, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

PATRICK A. MILES, JR.
United States Attorney

2/26/2016
Date

CHRISTOPHER M. O'CONNOR
Assistant United States Attorney

15

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

February 26, 2016
Date

ROBERT ALLEN HAVEMAN
Defendant

I am Robert Allen Haveman's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

February 26, 2016
Date

CHARLES E. CHAMBERLAIN, JR.
Attorney for Defendant